[No. 9792.   Department One. — November 29, 1887.]

## C. W. MOORE ET AL., APPELLANTS, *v.* JOHN F. BOYD ET AL., RESPONDENTS.

STOCKHOLDER'S LIABILITY — STATUTE OF LIMITATIONS. — A stockholder's liability is a "liability created by law," within the meaning of section 359 of the Code of Civil Procedure, and must be sued upon within three years after the discovery of the facts upon which the liability was created.

ID. — DISCOVERY OF THE FACTS. — For the purposes of the statute of limitations, if the means of knowledge exist, and the circumstances are such as to put the party on inquiry, he must be held to have had knowledge. Therefore, where the fact that defendants were stockholders was shown by the books of the company, a person who advanced money to the company must be held to have had knowledge of the facts upon which the defendant's liability was created.

ESTOPPEL BY ADMISSION. — An admission made to a third party, not connected with the plaintiff, does not operate as an estoppel in favor of plaintiff.

TRANSFER OF STOCK TO ESCAPE LIABILITY. — If the rule which prevails in some courts, as to transfer to escape liability, applies at all in California, it does not apply unless the transfer was for the purpose of escaping liability, and to a person whom the stockholder knew to be irresponsible.

TRANSFER TO ENABLE PARTY TO ACT AS DIRECTOR. — A transfer upon the books of the company of five shares, to enable a person to act as a director, makes him liable as a stockholder to the extent of such shares.

RULE, DE MINIMIS, ETC. — Where the amount of a stockholder's liability is only $1.40, the appellate court may apply the maxim, *De minimis non cur ut lex.*

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*James A. Waymire*, for Appellants.

The action is not barred, as the plaintiffs did not discover the facts creating the liability of the defendants until within three years prior to the commencement of the action. (Code Civ. Proc., sec. 359; *Green* v. *Beckman*, 59 Cal. 545; *Kane* v. *Cook*, 8 Cal. 459; *Bailey* v. *Glover*, 21 Wall. 342; *Boyd* v. *Blankman*, 29 Cal. 44; 87 Am. Dec. 146; *Currey* v. *Allen*, 34 Cal. 254; *Hayden* v. *Hayden*, 46 Cal. 333; *Scoville* v. *Thayer*, 105 U. S. 153.) The letter of the defendant Boyd estops him from denying that he was a stockholder. (Greenl. Ev., sec. 207; *Burritt* v. *Dickson*, 8 Cal. 113; *Mitchell* v. *Reid*, 9 Cal. 204; 70 Am. Dec. 647; *Hostler* v. *Hays*, 3 Cal. 302; *Davis* v. *Davis*, 26 Cal. 23; 85 Am. Dec. 157; *Martin* v. *Zellerbach*, 38 Cal. 300; 99 Am. Dec. 365; *Brewster* v. *Sime*, 42 Cal. 142; *Thompson* v. *Toland*, 48 Cal. 99, 113; *Horn* v. *Cole*, 51 N. H. 287; 12 Am. Rep. 111; *Drew* v. *Kimball*, 43 N. H. 285; 80 Am. Dec. 163; *Quirk* v. *Thomas*, 6 Mich. 76; *Finnegan* v. *Carraher*, 47 N. Y. 500; *Plumb* v. *Cattaraugus Mut. Ins. Co.*, 18 N. Y. 393; 72 Am. Dec. 526; *Blair* v. *Wait*, 69 N. Y. 116; *Chicago Packing Co.* v. *Tilton*, 87 Ill. 554; *Pickard* v. *Sears*, 6 Ad. & E. 469; *Preston* v. *Mann*, 25 Conn. 118; *Sweezey* v. *Collins*, 40 Iowa, 540; *Mayer* v. *Erhardt*, 88 Ill. 452; *Smith* v. *Cramer*, 39 Iowa, 413; *Litchfield Bank* v. *Church*, 29 Conn. 137; *Graft* v. *Pittsburg etc. R. R. Co.*, 31 Pa. St. 489; *Griswold* v. *Haven*, 25 N. Y. 595; 82 Am. Dec. 380; *McHose* v. *Wheeler*, 45 Pa. St. 32; Thompson on Liability of Stockholders, secs. 260–266; Bigelow on Estoppel, 3d ed., 368, 476, et seq.) The transfers of their stock by the defendants were void as to creditors. (*Bowden* v. *Johnson*, 107 U. S. 251; *Marcy* v. *Clark*, 17 Mass. 330; Angell and Ames on Corporations, sec. 623; Thompson on Liability of Stockholders, sec. 215.)

*McAllister & Bergin,* for Respondents.

The plaintiffs, having the means of discovering from the books of the company that the defendants were stock-

holders, will be chaaged with the knowledge of that fact; and the means of knowledge are equivalent to knowledge for the purposes of the statute of limitations. (*New Albany* v. *Burke*, 11 Wall. 107; *Manning* v. *San Jacinto Tin Co.*, 7 Saw. 432; *Wood* v. *Carpenter*, 101 U. S. 141; *Dannmeyer* v. *Coleman*, 8 Saw. 58; *Sweet* v. *Hentig*, 24 Kan. 500.) The letter of Boyd did not estop him to deny being a stockholder. (*Reynolds* v. *Lounsbury*, 6 Hill, 536; *Pope* v. *Dalton*, 31 Cal. 219; *Lux* v. *Haggin*, 69 Cal. 266; *Strong* v. *Strickland*, 32 Barb. 289; *Pennell* v. *Hinman*, 7 Barb. 649; *People* v. *Bank of North America*, 75 N. Y. 560; *Baker* v. *Mutual Union Life Ins. Co.*, 43 N. Y. 289.)

HAYNE, C. — This is an action against certain stockholders of the South Mountain Consolidated Mining Company, a corporation having a capital stock of one hundred thousand shares, upon an indebtedness of the company to plaintiffs of $46,953.50, incurred by the company during the months of July and August, 1875. The defendant Lent is alleged to have owned at that time 33,145 shares, the defendant Boyd 11,000 shares, and the defendant Willis " a large number of shares." The court below gave judgment for the defendants, and the plaintiffs appeal.

As the positions of the defendants are somewhat different, we will consider them separately.

1. The defendant Willis disposed of all the stock in which he had any actual interest before the months of July and August, 1875. Other stock, however, stood in his name " as trustee " upon the books of the company. In 1874, thirty thousand shares belonging to the company were placed in the name of " William Willis, Trustee." These shares were disposed of under the direction of the president in the acquisition of outstanding titles to the mine. As we gather from the evidence, no change was made in the way this stock stood upon the books of the company. Before July, 1875, about sixty

thousand other shares, belonging to one Minear, were placed in the name of "William Willis, Trustee," as collateral security for a debt of the company, for which Willis had made himself responsible. These shares stood upon the books of the company in this way during the months of July and August, 1875. But before that time the greater part had been sold to outside parties, and the proceeds applied to the reduction of the debt for which it was security. Most of the remainder was sold during said months of July and August. Whenever the stock was sold, Willis simply indorsed the certificates in blank, and delivered them to the purchasers, leaving the stock to stand upon the books of the company in the name of "William Willis, Trustee." As a matter of course, after this, he did not know what became of the stock or who owned it,—the certificate being transferable by delivery, "in the ordinary course of business, just like a twenty-dollar piece."

The position of appellants' counsel is that this made Willis liable as a stockholder. The argument is, that after the stock pledged was sold he no longer held it as collateral security; that its being on the books in his name enabled him to vote it, and control the company; and that the mere addition of the word "trustee" to his name, without stating for whom he was trustee, amounts to nothing under the decisions in *Brewster* v. *Sime*, 42 Cal. 142, and *Thompson* v. *Toland*, 48 Cal. 113. In other words, that he appeared upon the books of the company to be a stockholder, and that this made him liable.

We do not find it necessary to examine the validity of this argument. The condition of affairs above described existed at the time the indebtedness was contracted. And if we assume in favor of the appellants that it made Willis liable as a stockholder, it made him liable in July and August, 1875; and the claim against him is barred by the statute of limitations.

Section 359 of the Code of Civil Procedure is as follows: —

"SEC. 359.  This title does not affect actions against directors or stockholders of a corporation, to recover a penalty or forfeiture imposed or to enforce *a liability created by law;* but such actions must be brought within three years after the discovery by the aggrieved party of *the facts upon which* the penalty or forfeiture attached, or *the liability was created."*

The liability of a stockholder for the debt of the corporation is a liability " created by law " (*Green* v. *Beckman,* 59 Cal. 545); and therefore the above section applies to it.  More than three years having elapsed before the action was brought, the claim was barred by limitation unless there was no " discovery . . . . of the facts upon which . . . . the liability was created." What were such facts ?  Manifestly the existence of the indebtedness of the corporation, and the fact that the defendants owned a certain proportion of the stock.  Now, the plaintiffs, having advanced money directly to the corporation, could not have been ignorant of the indebtedness arising therefrom.  The inquiry therefore is reduced to this: Were they ignorant of the fact that during the months of July and August, 1875, the stock stood upon the books of the company in the name of " William Willis, Trustee " ?

For the purposes of the statute of limitations, if the means of knowledge exist, and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry.  This rule is applied both in equity (*New Albany* v. *Burke,* 11 Wall. 107; *National Bank* v. *Carpenter,* 101 U. S. 567) and at law (*Bailey* v. *Glover,* 21 Wall. 349; *Wood* v. *Carpenter,* 101 U. S. 141).  In the present case, the plaintiffs could have discovered how the stock stood upon the books of the company by looking at the books; and we think that it

was incumbent upon persons advancing money to the corporation, and relying upon the stockholders for payment, to have done so.  It is not shown that they made any effort to do so; and therefore they cannot claim the benefit of the exemption made by the section above quoted as to the running of the statute.

If, therefore, there was any liability upon Willis from the way the stock stood upon the books of the company, it is barred by limitation.

2. The defendant Boyd never had any stock in his name upon the books of the company, either as trustee or otherwise, except the five shares put in his name to qualify him to act as director.  He admits being interested in some of the stock at one time; but he disposed of it before July, 1875.  The court finds that "in the months of July and August, 1875, said defendants did not, nor did any of them, own any other or more of the capital stock of said South Mountain Consolidated Mining Company than the five shares thereof standing in their names as aforesaid."  This finding is as broad as the issue; and no objection is taken to its sufficiency in point of form.  And it responds to the questions presented by the evidence.  Was the evidence sufficient to support it?

As an original proposition we should have had much difficulty in coming to the conclusion that this defendant did not own eleven thousand shares of the stock at the time the indebtedness was incurred.  For in a letter to a third party, dated September 28, 1875, he said: " I am compelled to pay assessments on over eleven thousand shares of my own stock "; and the letter displays much indignation over the conduct of one Townsend, who was supposed to have depressed the value of the stock in the market.  But Boyd denied that he owned any stock, and explained his letter by saying that the company owed him money, which he expected to get out of the sum raised from the assessment; and that he

wrote the letter in the expectation that it would be shown to other stockholders, and would encourage them to pay the assessment on their stock. This explanation seems open to doubt. But the court below heard and saw the witness, and therefore had a better opportunity for arriving at a conclusion than is afforded by a record; and under the well-settled rule, its conclusion as to the fact will not be disturbed.

It is contended, however, that the letter referred to operated as an estoppel upon the writer, and prevented him from denying that he was a stockholder. But the admission was not made to the plaintiffs, or any of them, and therefore did not operate as an estoppel. (*Reynolds* v. *Lounsbury*, 6 Hill, 536.) To hold that an estoppel exists under these circumstances would be to make every admission an estoppel.

The foregoing disposes of the claim as to the defendant Boyd, and it is unnecessary to consider the question of the statute of limitations as to him.

3. The defendant Lent never had any stock in his name upon the books of the company, except the five shares necessary to qualify him as a director. He admits having been interested in a large number of shares, but testifies that he disposed of them before the months of July and August, 1875. We see nothing in the evidence to cast doubt upon the finding above quoted that he owned no stock at the time the indebtedness was incurred. He says, however, that a large part of this stock was given away or disposed of in a way he does not distinctly remember. His testimony is as follows: " I cannot remember at this time what disposition I made of it, but I am positive it was all sold at about the sum I gave for it. In the first place, in organizing a company, the first men that come in are newspaper men, who want to know what is this company, — want me to carry some stock. Another will want me to carry some stock, and I think every share of that stock went

in that way, but I cannot remember. . . . . I cannot remember now the disposition of my five hundred shares. I think I gave it out at different periods as presents to persons around the office, or some one else. I think I gave it to somebody or other. I don't know who it was, but after we got through with the three thousand five hundred shares, I know that Boyd, Willis, and myself said, 'We will give this away.' Willis said, 'I am going to give my mother mine.' Boyd said, 'I will give mine to Mrs. ——,'—I forget the name. And I said, 'I will do the same thing'; and what I did with it I don't know. I am so sure I had no stock after that," etc.

The learned counsel for the appellants argues that stock cannot be transferred in this way as against creditors of the corporation, and among other authorities cites *Bowden* v. *Johnston*, 107 U. S. 251, and Thompson on Stockholders, sec. 215. But the rule he invokes requires that the transfer should be for the purpose of escaping liability, and to a person whom the stockholders knows to be irresponsible. The evidence shows no such case. And if the rule is to be applied in this state (as to which we express no opinion), this is not a case for its application.

4. All three of the defendants were directors, and each had five shares of the company's stock transferred to their names upon the books of the company. This, we think, made them liable as stockholders. (*Wolf* v. *St. Louis I. W. Co.*, 15 Cal. 319.) But under the views above expressed, this liability was barred by limitation. And if this were not so, the matter is too trifling to require the reversal of the judgment. This seems to be the view of the counsel for the appellants; for on page 6 of his brief he says: "Even if the defendants had owned the five shares each standing in their names, the amount for which they would be liable would be such a trifling sum that it would not justify them in taking up

the time of the court with a suit, to say nothing of the costs to themselves.  Five shares to each of the defendants would be 15-100,000 of 46,963, or just a little over 70 cents; or with interest, about $1.40."  We quite agree with counsel that this is too trifling a matter to take up the time of a court.  It is a case for the application of the maxim, *De minimis non curat lex.* ( *Wolff* v. *Prosser,* 73 Cal. 219.)

We therefore advise that the judgment and order be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.